UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

KATHLEEN HUNT,

    Plaintiff,

v.                            Case No.: 8:15-cv-1257-T-33EAJ

BOB GUALTIERI, ET AL.,

    Defendants.
_____/

**ORDER**

This cause comes before the Court pursuant to Plaintiff Kathleen Hunt's Amended Motion to Sever and Remand (Doc. # 18), which was filed on June 22, 2015. This Motion is ripe for this Court's review. (See Doc. ## 23, 25). For the reasons that follow, Plaintiff's Motion is denied.

**I.   Background**

On May 15, 2015, Plaintiff initiated this action against Defendants Bob Gualtieri, in his capacity as Sheriff of Pinellas County, Maria Cruz, Shawn Fox, Gary Paxson and Maxim Physician Resources, LLC. (Doc. # 2). This action arises from the Decedent's – George Hunt, IV – arrest, incarceration, medical evaluation, and subsequent death at Pinellas County Jail. (Id.). In the Complaint, Plaintiff alleges the following Counts:

>   Count I: General Negligence of Defendant Gualtieri Resulting in Wrongful Death
>
>   Count II: Medical Negligence of Defendant Gualtieri Resulting in Wrongful Death
>
>   Count III: 42 U.S.C. § 1983 – Custom and Practice of Deliberate Indifference Defendant Gualtieri
>
>   Count IV: 42 U.S.C. § 1983 – Deliberate Indifference to a Serious Medical Need Under the Fourteenth Amendment Against Defendant Nurse Cruz
>
>   Count V: 42 U.S.C. § 1983 – Deliberate Indifference to a Serious Medical Need Under the Fourteenth Amendment Against Defendant Corporal Fox
>
>   Count VI: 42 U.S.C. § 1983 – Deliberate Indifference to a Serious Medical Need Under the Fourteenth Amendment Against Defendant Corporal Paxson
>
>   Count VII: Breach of Contract by Defendant Maxim
>
>   Count VIII: Negligence of Defendant Maxim Resulting in Wrongful Death

(Id.).

On May 22, 2015, Gualtieri filed a Notice of Removal, which the remaining Defendants joined. (See Doc. ## 1, 8, 11). By way of the present Motion, Plaintiff seeks an Order of this Court (1) severing and remanding Counts I and II brought against Gualtieri, as these claims are "based on general negligence and medical malpractice respectively and

2

involve only state law" and (2) severing and remanding all claims against Maxim as they "sound in common law breach of contract, common law negligence and involve more generally the services it rendered to the Pinellas County Jail, not specifically the night of the [D]ecedent's death." (Doc. # 18 at 2).

## II. Legal Standard

Plaintiff does not suggest that removal of this action was improper or that there was any defect in Gualtieri's removal of this action. (See Id.). Rather, Plaintiff requests that that this Court – in its discretion – decline to exercise supplemental jurisdiction over certain Counts of this action pursuant to 28 U.S.C. § 1367, which states in relevant part:

> (a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.
>
> (b) . . .
>
> (c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if –

3

>    (1) the claim raises a novel or complex issue of State law,
>    (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>    (3) the district court has dismissed all claims over which it has original jurisdiction, or
>    (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

See 28 U.S.C. § 1367.

As set forth in <u>Woodard v. Town of Oakman, Alabama</u>:

> Supplemental jurisdiction entails a two-step inquiry where the Court must first determine whether it can exercise its supplemental jurisdiction and then whether it should exercise that jurisdiction. Section 1367(a) provides the power of supplemental jurisdiction only when the claims "form part of the same case or controversy under Article III of the United States Constitution." For the Court to have the power to exercise supplemental jurisdiction, the claims must "derive from a common nucleus of operative fact." If the Court has the power to exercise supplemental jurisdiction as specified in § 1367(a), it must nonetheless consider § 1367(c) to determine whether jurisdiction over the state claim is appropriate.

970 F. Supp. 2d 1259, 1275 (N.D. Ala. 2013) (internal citations omitted).

### III. **Analysis**

#### a. **Counts I and II Against Gualtieri**

Plaintiff does not dispute that Counts I and II arise from the same case or controversy as the remaining claims.

4

Rather, according to Plaintiff, the Court should use its discretion and sever these state law claims against Gualtieri as "[these] claims are so different from the federal claims so as to make them substantially predominate the federal claims. . . ." (Doc. # 18 at 5). In addition, Plaintiff suggests exceptional circumstances warrant severance as "the state law claims brought are inherently different, with different elements, standards and damages which if tried together, would likely cause jury confusion and delay." (Id.).

To that end, Plaintiff argues that "the standards applicable to section 1983 claims are so different from [Counts I and II] that allowing the claims to be tried together, create[s] a high likelihood of jury confusion." (Id. at 7-8). Specifically, Plaintiff states that such confusion:

> creates a likely scenario that a jury will be confused between the relatively high standards involving 1983 claims with the much lower standards involving common law negligence claims. This creates a potential that a jury will intertwine the two in its thinking, and hold the Plaintiff to a higher standard[] in the negligence claims than the law dictates. There are also very different elements of damages.

5

(Id.)(citing Gamez v. Brevard Cnty., Fla., No. 6:06-CV-716-ORL-22DAB, 2006 WL 2789031, at *2 (M.D. Fla. Sept. 26, 2006)(declining to exercise supplemental jurisdiction over state wrongful death claims as "combining . . . Plaintiffs' [section] 1983 federal law claims with Plaintiff's claims for wrongful death pursuant to §§ 768.16-768.27, Florida Statutes, would only serve to create jury confusion and delay, particularly with respect the different elements of damages").

However, in response, Gualtieri argues that "[t]he interests of judicial economy and the efficient, expeditious, just, and final resolution of this case militate against severance and remand of the state-law claims for relief at this juncture." (Doc. # 25 at 4). This Court agrees.

Counts I and II do not concern novel or complex issues that substantially predominate over the federal claims. This Court regularly addresses section 1983 actions that also contain conventional state law claims, such as negligence. In analyzing such actions, this Court is more than equipped to apply the proper standards applicable to section 1983 claims and those of general negligence.

Furthermore, in the event this action proceeds to a jury trial, the Court will inform the jury on the proper law to

6

apply for each Count and, if appropriate, will inform the jury on the proper elements to apply in calculating damages. Thus, for the reasons stated above, the Court does not find sufficient reason to sever and remand Counts I and II, and therefore, Plaintiff's Motion is denied as to these Counts.

### b. Counts VII and VIII Against Maxim

Plaintiff seeks severance and remand of Counts VII and VIII as "the claims against Maxim involve only state law claims and involve claims related to its business practices, not the night of the [D]ecedent's death directly," and thus, "those claims do not involve the same case or controversy and clearly should be severed and remanded." (Doc. # 18 at 5). However, even if this Court finds that these Counts do involve the same case and controversy, Plaintiff argues that the Court should nonetheless decline to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c) for the same reasons articulated above for the state law claims against Gualtieri. (Id. at 10). The Court will address each argument in turn.

#### 1. Whether Counts VII and VIII Involve the Same Case and Controversy as Federal Claims

In deciding whether a state law claim is part of the same case or controversy as the federal issue, for purposes of supplemental jurisdiction, courts look to "whether the

7

claims arise from the same facts, or involve the same occurrences, witnesses or evidence." Hudson v. Delta Air Lines, Inc., 90 F.3d 451, 455 (11th Cir. 1996).

According to the Complaint, Maxim entered into an agreement with the Sheriff of Pinellas County[1] to provide "on-call physicians to provide medical care to the inmates at the Pinellas County Jail, including the Decedent." (Doc. # 2 at ¶ 96). Relevant to this case, Maxim provided the Pinellas County Jail with the services of Dr. Luis A. Quinones - the on-call physician on the night in question. (Id. at ¶ 15).

As it relates to Count VII (Breach of Contract), Plaintiff contends that the Decedent was a "primary and direct beneficiary of the contract" entered into between Maxim and the Sheriff of Pinellas County and asserts that Maxim breached its contract by providing the Pinellas County Jail with the services of Dr. Quinones who was not fully licensed under the laws of Florida or was not practicing medicine within the scope of his license. (Id. at ¶ 100). As a "direct and

---

[1] According to the Complaint, the contract was originally entered into between Maxim and the previous Pinellas County Sheriff, Jim Coats, on October 5, 2010. (Doc. # 2 at ¶ 97). The contract was amended by an Agreement Amendment signed by Gualtieri on May 23, 2013. (Id. at ¶ 98).

proximate result" of Maxim's breach, damages were sustained. (Id. at ¶ 101).

As for Count VIII (Negligence), Plaintiff contends that Maxim negligently breached its duty to use due care in the hiring and retention of its physicians, including Dr. Quinones, which resulted in damages to Plaintiff. (Id. at ¶¶ 103 – 105). In both Counts VII and VIII, when describing the damages sustained, Plaintiff refers back to paragraph 50 of the Complaint, which appears in the general fact section. (See Id. at ¶ 50).

In its Motion, Plaintiff submits that the elements of Counts VII and VIII are "clearly different than the federal claims brought against the other Defendants." (Doc. # 18 at 10). Specifically, Plaintiff posits that "the claims against Maxim involve the internal business practices of Maxim including its hiring, training and employment qualification verification process." (Id.). Therefore, it is Plaintiff's position that such claims "involve totally different facts, witnesses, and evidence and therefore the claims are not sufficiently similar to the federal claims for this Court to exercise supplemental jurisdiction." (Id.). However, the Court disagrees with Plaintiff's position that Counts VII and VIII are unrelated to the night of the Decedent's death.

9

From the Court's review of the Complaint, the claims against Maxim stem directly from and arise out of the death of the Decedent. As stated by Plaintiff in its Motion, "The case stems from the [D]ecedent, George Hunt, IV's, arrest, incarceration, medical evaluation, and eventual death at the Pinellas County Jail." (Doc. # 18 at ¶ 2). Likewise, in the Complaint, Plaintiff incorporates by reference the same factual allegations into each Count, which include Counts VII and VIII. (See Doc. # 2).

Although Plaintiff contends that the claims against Maxim involve only their "internal business practices" (Doc. # 18 at 10), the Court determines that Maxim's involvement in this action is predicated on the care rendered to the Decedent by Dr. Luis Quinones at the Pinellas County Jail on the night of the Decedent's death. It is not apparent to this Court that absent the Decedent's death, Plaintiff would have a basis to bring Counts VII and VIII against Maxim.

Additionally, as discussed by Maxim, the Court finds – at this time – that Counts VII and VIII will likely involve the same witnesses and same evidence as the remaining Counts. This is because the Counts against Maxim arise out of the medical care rendered by Dr. Quinones to the Decedent. See Palmer v. Hosp. Auth. of Randolph Cnty., 22 F.3d 1559, 1566

(11th Cir. 1994)(state law claims arising out of the same set of events as the federal law claims permitted the federal court to exercise supplemental jurisdiction).

As this Court finds that Counts VII and VIII involve the same case or controversy as the remaining Counts, the Court denies Plaintiff's Motion on this ground.

### i. **Whether Supplemental Jurisdiction is Nevertheless Appropriate**

Even if Counts VII and VIII involve the same case and controversy as the federal claims, Plaintiff argues that the Court should nonetheless decline to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c) for the same reasons articulated above for the state law claims against Gualtieri. (Doc. # 18 at 10). Specifically, Plaintiff contends the "likelihood of jury confusion in treating divergent legal theories of relief" should justify the separation of the state and federal claims. (Id. at 7). However, the Court declines to adopt Plaintiff's position.

Counts VII and VIII do not raise novel or complex issues of state law. As articulated above, this Court regularly addresses section 1983 actions that also include state law claims, such as those contained in Counts VII and VIII. In addition as this Court previously found that Counts VII and

11

VIII will likely involve the same witnesses and same evidence as the remaining Counts, Counts VII and VIII do not substantially predominate over the federal claims.

Finally, the Court fails to find any other compelling reason to decline to exercise supplemental jurisdiction over Counts VII and Counts VIII, at this time. In analyzing Counts VII and VIII, this Court is capable of applying the proper standards applicable to these causes of action. Furthermore, in the event this action proceeds to a jury trial, the Court will inform the jury on the proper law to apply for each Count to rid any potential jury confusion on these matters. Thus, for the reasons stated above, the Court finds insufficient justification to sever and remand Counts VII and VIII, and therefore, Plaintiff's Motion is denied as to these Counts.

Accordingly, it is hereby

**ORDERED, ADJUDGED,** and **DECREED:**

Plaintiff Kathleen Hunt's Amended Motion to Sever and Remand (Doc. # 18) is **DENIED.**

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 13th day of July, 2015.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies:   All Counsel of Record