UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

KATHLEEN HUNT,

       Plaintiff,

v.                    Case No. 8:15-cv-1257-T-33EAJ

BOB GUALTIERI, ET AL.,

       Defendants.
_____/

## ORDER

This cause comes before the Court pursuant to the Motion to Dismiss Plaintiff's Amended Complaint by Defendants Maria Cruz and Shawn Fox (hereinafter "Nurse Cruz" and "Deputy Fox") (Doc. # 71), filed on November 5, 2015. Plaintiff, Kathleen Hunt, as Personal Representative of the Estate of George Arthur Hunt, IV, filed a response to the Motion to Dismiss on November 20, 2015. (Doc. # 75). With leave of Court, Defendants filed a reply on December 7, 2015. (Doc. # 81). The Court held a hearing on this matter on March 2, 2016. For the reasons announced at the hearing and for the reasons that follow, the Motion is denied.

## I.  Background

On May 18, 2013, following an arrest for driving under the influence, Mr. Hunt was transported to the Sheriff's

Office breathalyzer facility and then to Pinellas County Jail. (Doc. # 61 at ¶¶ 21-22). Mr. Hunt arrived at Pinellas County Jail at approximately 8:00 P.M. (Id. at ¶ 23). Thereafter, a Sheriff's employee, Nurse Cruz of the Pinellas County Jail medical staff, interviewed and screened Mr. Hunt. (Id. at ¶ 25). Mr. Hunt advised Nurse Cruz that he was under a physician's care, had been told he suffered from liver problems, and had started to become yellow about a week before. (Id.)

Nurse Cruz consulted with a nurse supervisor about Mr. Hunt's condition. (Id. at ¶ 26). Nurse Cruz described Mr. Hunt as having "very obvious" yellow coloring with jaundice, "a tongue strawberry in color," and "generalized jaundice from head to toe." (Id. at ¶ 27). Nurse Cruz and her supervisor cleared Mr. Hunt for admission to the Jail at approximately 10:30 P.M. (Id. at ¶ 28).

Subsequently, Mr. Hunt became "unsteady" and was given a wheelchair. (Id. at ¶ 29). Deputy Fox saw Mr. Hunt and described his extreme yellow discoloration as the worst he had ever seen. (Id. at ¶ 30). Mr. Hunt was assigned to a medical unit, in a single cell, isolated from contact with others because of his profound jaundice. (Id. at ¶ 32). In

2

addition, the supervising nurse determined that Mr. Hunt should be released on his own recognizance to a hospital emergency room as soon as it was legally possible to do so. (Id. at ¶ 35).

At approximately 10:30 P.M., Nurse Cruz contacted the off-site, on-call physician, Dr. Quinones by telephone regarding Mr. Hunt. (Id. at ¶ 38). Dr. Quinones ordered medications for Mr. Hunt and directed that Nurse Cruz call back in one hour with an update on Mr. Hunt's condition and vital signs. (Id. at ¶¶ 41, 63). Despite Dr. Quinones's orders to re-check Mr. Hunt at approximately 11:30 P.M., Nurse Cruz ignored those orders and did nothing. (Id. at ¶ 65).

When Mr. Hunt was placed in the cell in the medical unit at approximately 10:50 P.M., his condition had very rapidly declined to the point "he was extremely lethargic and unable to move himself from the wheelchair onto the bunk or assist the deputies in any way in doing so." (Id. at ¶ 33). Deputy Fox and Corporal Paxson had to lift Mr. Hunt into his bunk. (Id.). Although Mr. Hunt was suffering from an "obvious and serious medical condition that required immediate medical intervention," Deputy Fox and Corporal Paxson failed to seek medical intervention or to take any other action. (Id. at ¶

3

34).

At approximately 12:23 A.M., deputies noticed that Mr. Hunt had not moved at all in his bunk. (Id. at ¶ 47). Sergeant Holderbaum, Corporal Paxson, and Deputy Mobley entered Mr. Hunt's cell for a welfare check and concluded that Mr. Hunt was not breathing. (Id. at ¶¶ 48, 49). Despite their training in cardio pulmonary resuscitation (CPR), Corporal Paxson, Sergeant Holderbaum, and Deputy Mobley did not check Mr. Hunt's pulse or commence CPR. (Id. at ¶ 50). Instead, they called a medical emergency and did nothing until members of the medical staff arrived. (Id.)

At approximately 12:40 A.M. on May 19, 2013, Lt. Campbell authorized Mr. Hunt to be released on his own recognizance for transportation to a medical facility. (Id. at ¶ 51). Shortly thereafter, paramedics were called, but the Jail medical staff and emergency medical personnel could not revive Mr. Hunt. (Id. at ¶ 52). Mr. Hunt was pronounced dead at 1:03 A.M. on May 19, 2013. (Id.)

Plaintiff initiated this action in state court on May 15, 2015, and Defendant Sheriff Gualtieri removed the case to this Court on May 22, 2015. (Doc. ## 1, 2). Plaintiff filed a nine-count Amended Complaint on October 19, 2015. (Doc. #

4

61). This Court bifurcated counts IV-X from the current action, opened a new case for counts IV-X (8:16-cv-509-T-33EAJ), and stayed that case. (Doc. # 104). There is no count III.   Accordingly, the only counts remaining in this action are counts I and II against Nurse Cruz and Deputy Fox, respectively. Plaintiff asserts both count I and II under 42 U.S.C. § 1983 for violation of the Fourteenth Amendment to the United States Constitution. Nurse Cruz and Deputy Fox seek dismissal pursuant to Rule 12(b)(6), Fed. R. Civ. P., and also assert the defense of qualified immunity. (Doc. # 71). As articulated at the March 2, 2016, hearing, the Court denies Defendants' Motion.

## II.   **Legal Standard Fed. R. Civ. P. 12(b)(6)**

On a motion to dismiss, this Court accepts as true all the allegations in the complaint and construes them in the light most favorable to the plaintiff. Jackson v. BellSouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004). Further, this Court favors the plaintiff with all reasonable inferences from the allegations in the complaint. Stephens v. Dep't of Health & Human Servs., 901 F.2d 1571, 1573 (11th Cir. 1990)("On a motion to dismiss, the facts stated in [the] complaint and all reasonable inferences therefrom are taken

as true.").

However, the Supreme Court explains that:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level.

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)(internal citations omitted). Further, courts are not "bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).

## III. **Analysis**

Plaintiff's Section 1983 claims allege that (1) Mr. Hunt suffered a serious medical condition at the time that he was booked into the Pinellas County Jail and throughout his incarceration; (2) Nurse Cruz and Deputy Fox were deliberately indifferent to Mr. Hunt's serious medical condition, which led to Mr. Hunt's death; and (3) at the time Mr. Hunt was detained in the Pinellas County Jail, he had a clearly established right to receive medical attention. (Doc. # 61 at ¶¶ 58-68, 71-86).

The Eleventh Circuit has held that:

6

> Claims involving the mistreatment of arrestees or pretrial detainees in custody are governed by the Fourteenth Amendment's Due Process Clause instead of the Eighth Amendment's Cruel and Unusual Punishment Clause, which applies to such claims by convicted prisoners. However, the applicable standard is the same, so decisional law involving prison inmates applies equally to cases involving arrestees or pretrial detainees.

Cottrell v. Caldwell, 85 F.3d 1480, 1490 (11th Cir. 1996) (internal citations omitted).

The government has a constitutional obligation to provide adequate medical care to inmates. Estelle v. Gamble, 429 U.S. 97, 103 (1976). The failure to provide such medical care can be the basis for a civil rights claim pursuant to 42 U.S.C. § 1983. Id. at 104. However, it is not enough for a prisoner to allege that he did not receive adequate medical care. Id. at 105. Rather, "In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Id. at 106. To establish a claim for deliberate indifference, a plaintiff must meet both an objective and a subjective standard. Farmer v. Brennan, 511 U.S. 825, 838 (1994); Andujar v. Rodriguez, 486 F.3d 1199, 1203-04 (11th Cir. 2007).

A. **Objective Standard**

First, Defendants assert that the Amended Complaint

7

fails to meet the objective standard for a claim of deliberate indifference. (Doc. # 71 at 10). To satisfy the objective standard, a plaintiff must prove an "objectively serious medical need." Andujar, 486 F.3d at 1203. An objectively serious medical need is one that is "diagnosed by a physician as mandating treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003)(internal citation omitted). "In either of these situations, the medical need must be one that, if left unattended, poses a substantial risk of serious harm." Id.

The Amended Complaint alleges that Mr. Hunt was diagnosed with a serious medical need and his medical need "was so obvious that a layperson would easily recognize the necessity for a doctor's attention." (Doc. # 61 at ¶¶ 61, 73). Upon his admission to the Jail, Mr. Hunt had extremely yellow skin, a strawberry-colored tongue, and "generalized jaundice from head to toe." (Id. at ¶ 27). Mr. Hunt had a history of liver disease and high blood pressure, was under a physician's care, and had started to become yellow about a week before. (Id. at ¶ 25). Deputy Fox, a lay person, described Mr. Hunt as suffering the most extreme

8

discoloration he had ever seen. (Id. at ¶ 30). By the time Deputy Fox placed him in his cell, Mr. Hunt was "lethargic, nonambulatory, obtunded, immobile, and uncommunicative. . . ." (Id. at 79). Based on these allegations, the Court finds Plaintiff has adequately pled Mr. Hunt's objectively serious medical need.

### B. Subjective Standard

Next, Nurse Cruz and Deputy Fox submit that the Amended Complaint fails to establish that they acted with deliberate indifference to Mr. Hunt's medical need. (Doc. # 71 at 12-13). In addition to meeting the objective standard, a plaintiff must establish that the defendant had a "sufficiently culpable state of mind." Cottrell, 85 F.3d at 1491 (quoting Farmer, 511 U.S. at 834). A plaintiff must "prove that the official acted with deliberate indifference to that need." Andujar, 486 F.3d at 1203. To satisfy this subjective standard, a "[p]laintiff must show that a Defendant had (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than [gross] negligence." Burnette v. Taylor, 533 F.3d 1325, 1330 (11th Cir. 2008)(citation omitted).

Deliberate indifference can be found where an official

"knows that an inmate is in serious need of medical care, but . . . fails or refuses to obtain medical treatment for the inmate." <u>Lancaster v. Monroe Cty., Ala.</u>, 116 F.3d 1419, 1425 (11th Cir. 1997). In addition, the official may act with deliberate indifference by delaying the treatment of serious medical needs, providing grossly inadequate care, deciding to take an easier but less efficacious course of treatment, or providing medical care that is so cursory as to amount to no medical care. <u>McElligott v. Foley</u>, 182 F.3d 1248, 1255 (11th Cir. 1999).

Because the subjective test requires a defendant to have actual knowledge, "imputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference." <u>Burnette</u>, 533 F.3d at 1330. "Each individual Defendant must be judged separately and on the basis of what that person knows." <u>Id.</u> Accordingly, the Court will address the Plaintiff's claims against Nurse Cruz and Deputy Fox independently.

### 1. <u>Nurse Cruz's Deliberate Indifference to Mr. Hunt</u>

First, the Amended Complaint alleges that Nurse Cruz "had actual knowledge that Mr. Hunt suffered from a serious medical need upon his admission to the jail." (Doc. # 61 at

10

¶¶ 62). In support of this, the Amended Complaint avers that Nurse Cruz observed Mr. Hunt's profoundly jaundiced condition, yellow eyes, and strawberry tongue. (Id. at ¶¶ 27, 62). She also knew of Mr. Hunt's history of high blood pressure and liver disease. (Id. at ¶ 62). Nurse Cruz noted that Mr. Hunt was slow to respond her to questions, and she watched him become "unsteady" to the point that he required a wheelchair. (Id. at ¶¶ 29, 62, 64). The Court finds that Plaintiff has pled sufficient facts so that a reasonable jury could find Nurse Cruz had actual knowledge of Mr. Hunt's serious medical need.

The Amended Complaint also alleges that Nurse Cruz knowingly disregarded the risk imposed by Mr. Hunt's medical condition.  Plaintiff alleges Nurse Cruz was licensed by the State of Florida to practice nursing. (Id. at ¶ 15). Based her knowledge and observations, Nurse Cruz contacted Dr. Quinones concerning Mr. Hunt's condition. (Id. at ¶ 38, 63). Dr. Quinones provided Nurse Cruz with specific instructions, however, she did not abide by those instructions. (Id. at ¶¶ 41, 63, 65). Plaintiff alleges that Nurse Cruz's "deliberate failure" to recheck Mr. Hunt delayed his medical treatment and ultimately led to his death. (Id. at ¶¶ 66, 67). These

allegations satisfy Plaintiff's burden of pleading conduct that is beyond gross negligence. See Hernandez v. Sec'y, Fla. Dep't of Corr., 611 Fed. Appx. 582, 584 (11th Cir. 2015)("Conduct that is more than mere negligence includes, inter alia, grossly inadequate care and a delay in treatment.")

Accordingly, this Court finds that the Plaintiff has pled sufficient factual allegations to establish Nurse Cruz's deliberate indifference to Mr. Hunt's serious medical need. See Bauer v. Kramer, 424 Fed. Appx. 917, 919 (11th Cir. 2011)(stating that a nurse who ignores a doctor's orders may be found  deliberately indifferent to medical needs); compare Kruse v. Williams, 592 Fed. Appx. 848, 856 (11th Cir. 2014)(affirming grant of qualified immunity to a corrections nurse when an arrestee with Addison's disease died under her care when the nurse responded to the medical condition, administered medication, and monitored the arrestee carefully.  She ''responded reasonably to the risk, even if the harm ultimately was not averted.'').

**2. Deputy Fox's Deliberate Indifference to Mr. Hunt**

As with Nurse Cruz, the Court finds that Plaintiff has sufficiently alleged that Deputy Fox was deliberately indifferent to Mr. Hunt's serious medical needs.  Plaintiff

12

alleges that Deputy Fox described Mr. Hunt as "the most jaundiced person he had ever seen." (Doc. # 61 at ¶¶ 30, 75). In addition, Plaintiff alleges that Deputy Fox witnessed Mr. Hunt's condition rapidly decline from a person who was able to walk and talk to a person who "was uncommunicative, unable to sit up right, and was [] immobile." (Id. at ¶ 33). The Amended Complaint also alleges that Deputy Fox "knew Mr. Hunt had a medical condition which, if left unattended, would lead to serious harm." (Id. at ¶ 37). These contentions are sufficient to allege "subjective knowledge of a risk of serious harm." Burnette, 533 F.3d 1330.

The Amended Complaint also contains allegations that Deputy Fox disregarded that risk in a manner beyond gross negligence. Specifically, the Amended Complaint alleges that Deputy Fox, "recognizing Mr. Hunt's serious medical condition" placed Mr. Hunt "immediately in front of his desk in order to watch him." (Doc. # 61 at ¶ 76). Deputy Fox continued to observe Mr. Hunt's worsening medical condition when he wheeled Mr. Hunt into his cell and had to lift Mr. Hunt onto his bunk. (Id. at ¶ 78). By the time that Deputy Fox placed Mr. Hunt in his isolation cell, Mr. Hunt was "lethargic, nonambulatory, obtunded, immobile, and

13

uncommunicative." (Id. at ¶ 79). These allegations, which are corroborated by the Jail surveillance video, provide sufficient facts, which, if proven, demonstrate that Deputy Fox knew of Mr. Hunt's serious medical need, but disregarded it in a manner beyond gross negligence.

In reaching this determination, the Court notes that in some medical situations, it might not be obvious to a law enforcement officer that an arrestee is in need of immediate medical care. That was the case in Burnette, when the arrestee in question overdosed on his stepfather's prescription medications. 533 F.3d at 1327. When the personal representative sued detention deputies for deliberate indifference to a serious medical need, the trial court denied the detention deputies' request for qualified immunity. Id. The Eleventh Circuit reversed because the deceased arrestee showed some signs of intoxication, but did not exhibit obvious indications that he had consumed a lethal combination of medications and "did not manifest signs of a serious medical need." Id. at 1332. The court concluded: "The Constitution does not require an arresting police officer or jail official to seek medical attention for every arrestee or inmate who appears to be affected by drugs or

14

alcohol." Id. at 1333.

In contrast, in this case, there were obvious indications that Mr. Hunt was suffering from a severe medical condition based on Mr. Hunt's physical appearance (being yellow from head to toe and becoming completely immobile and unable to ambulate or communicate), and the Amended Complaint contains allegations to support that Mr. Hunt's condition was worsening right before Deputy Fox's eyes.  Even though Deputy Fox does not possess the medical credentials of Nurse Cruz, the Court nevertheless determines that the Amended Complaint contains allegations that Deputy Fox was aware of Mr. Hunt's obvious medical needs and deliberately ignored them in a manner beyond gross negligence.

The Amended Complaint alleges that although Deputy Fox had knowledge of Mr. Hunt's serious medical need, "he took no action to further personally interact or communicate with the Decedent or to contact any medical personnel whatsoever." (Doc. # 61 at ¶ 80). Plaintiff also contends that Deputy Fox knowingly disregarded Mr. Hunt's declining serious medical need by placing Mr. Hunt into an isolation cell that made it more difficult to monitor his medical condition. (Id. at ¶ 81). Further, Plaintiff alleges that Deputy Fox "chose to do

nothing to alleviate the serious medical condition of a person in his care and custody." (Id. at ¶ 82).   Rather than recommend immediate medical transport, Deputy Fox placed Mr. Hunt in an isolated cell in which Mr. Hunt died alone and without medical intervention. (Id. at ¶ 83).   See Wate v. Tactuk, No. 8:14-cv-1196-T-33TBM, 2015 U.S. Dist. LEXIS 21893, at *8-9 (M.D. Fla. Feb. 24, 2015)(finding that the plaintiff sufficiently alleged a Fourteenth Amendment claim for deliberate indifference to a serious medical need when, inter alia, a police officer failed seek medical attention on behalf of an arrestee who could not breathe and had "turned blue in color."); Danley v. Allen, 540 F.3d 1298, 1312 (11th Cir. 2008)("When prison guards ignore without explanation a prisoner's serious medical condition that is known or obvious to them, the trier of fact may infer deliberate indifference."); Bell v. Prison Healthcare LLC, No. 2:12-cv-2991, 2015 U.S. Dist. LEXIS 89703, at *10 (N.D. Ala. July 10, 2015)("While mere negligence or even malpractice does not rise to the level of deliberate indifference, in this case, the medical staff took an unresponsive, jaundiced inmate and placed her in the medical unit for over an hour with no treatment other than taking her vitals. . . . A reasonable

16

jury could determine that the need to treat an unresponsive, jaundiced woman was obvious, and that the treatment provided was so cursory as to amount to no treatment at all.").

### C. Qualified Immunity

In addition to challenging the sufficiency of the allegations of the Amended Complaint, Nurse Cruz and Deputy Fox argue that they are entitled to qualified immunity and are, therefore, immune from suit. (Doc. # 71). "While the defense of qualified immunity is typically addressed at the summary judgment stage of a case, it may be, as it was in this case, raised and considered on a motion to dismiss." St. George v. Pinellas Cty., 285 F.3d 1334, 1337 (11th Cir. 2002).

In the context of a motion to dismiss, "the Court determines whether the Complaint alleges a clearly established constitutional violation, accepting the facts alleged in the complaint as true, drawing all reasonable inferences in the plaintiff's favor, and limiting its review to the four corners of the complaint." Hatcher ex rel. Hatcher v. DeSoto Cty. Sch. Dist. Bd. of Educ., 939 F. Supp. 2d 1232, 1237 (M.D. Fla. 2013) aff'd sub nom. Hatcher ex rel. Hatcher v. Fusco, 570 Fed. Appx. 874 (11th Cir. 2014). In other words, when qualified immunity is raised in a motion to dismiss, the

motion may be granted only "if the complaint fails to allege the violation of a clearly established constitutional right." St. George, 285 F.3d at 1337.

As detailed above, Plaintiff has properly alleged the violation of Mr. Hunt's constitutional rights under the Fourteenth Amendment. (Doc. # 61 at ¶¶ 58, 71). It was clearly established that Mr. Hunt had a constitutional right to receive adequate medical care. Estelle, 429 U.S. at 104-05. In addition, "[i]t is well settled that prison officials' deliberate indifference to prisoners' serious medical needs gives rise to a constitutional claim." Harris v. Coweta Cty., 21 F.3d 388, 393 (11th Cir. 1994). Therefore, the Court finds that Nurse Cruz and Deputy Fox are "not entitled to the defense of qualified immunity at this stage of the case." St. George, 285 F.3d at 1338. In the event that Nurse Cruz and Deputy Fox choose to raise the defense further in the proceedings, the Court will address the issue of qualified immunity at that juncture.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

Defendants Maria Cruz and Shawn Fox's Motion to Dismiss Plaintiff's Amended Complaint (Doc. # 71) is **DENIED.**

18

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this

18th day of March, 2016.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

19